### STATE v. WILLIAMS
No. 75-2640.
Circuit Court, Duval County.
October 31, 1975.

T. Edward Austin, Jr., State Attorney, for the state.

Louis O. Frost, Jr., Public Defender, Carl K. Zolezzi, Assistant Public Defender, for the defendant.

Harold B. Wahl of Wahl & Gabel, Jacksonville, for the amici curiae.

HUDSON OLLIFF, Circuit Judge.

*Order on motion to restrain pre-trial publicity:* The defendant through his attorney, an assistant public defender, has filed a motion to restrain pre-trial publicity, a copy of the motion is attached hereto and made a part hereof.

The assistant defender contends that the motion was never officially filed and that there is no issue for the court to rule upon. I have ruled that the motion was filed. The facts leading up to this order are as follows —

During the late afternoon of Friday, October 10, 1975, several assistant defenders came to my chambers with the motion, a brief on the law and several loose newspaper clippings. An assistant state attorney was also present and he was served with copies of the motion and brief.

There was a discussion between the assistant defenders, the assistant state attorney and the undersigned judge, and at that time I stated that I thought the motion was premature in view of the fact that the defendant had only been arrested several days previously and that there had only been 4 or 5 newspaper stories concerning the case.

The assistant defender emphasized a portion of the motion which alleged that certain newspaper stories had inferred a possible link between the present case and other recent robbery murders, submitting loose newspaper articles in support of the allegations in the motion.

I stated that I would take the motion under advisement until Monday, October 13, 1975, and would rule upon it on that date. I then telephoned the officer whose name was set forth in the motion and requested that he not make any statements concerning this defendant in connection with any other crimes until after a ruling was made on the motion the following Monday.

I then handed the motion back to the assistant defender with instructions to attach the loose newspaper clippings to the motion

as an exhibit. At that time the discussion terminated and the assistant defender took the original motion, the newspaper clippings and left chambers.

The assistant defender did not come forward in furtherance of the motion on the following Monday and when I asked that the motion be sent to me I learned that it had not been delivered to the clerk's office by the assistant defender.

I have ruled that the motion was filed when the assistant defender came to my chambers, gave me the original motion, provided a copy to the assistant state attorney, had discussion of the merits of the motion and had me act upon it to a limited degree. The fact that I did not make the notation "filed" upon the motion is immaterial. For all intents and purposes it was filed just as if it had been stamped in the clerk's office and recorded. Nor does it make any difference that the assistant defender had second thoughts about the wisdom of his motion and decided to withhold the original rather than deliver it to the clerk's office or return it to me, or that after I had ruled that the motion had been filed he asked leave to withdraw it.

After the motion was filed by the assistant public defender, the Florida Times Union and the Jacksonville Journal newspapers, and the Greater Jacksonville Chapter of the Society of Professional Journalists in Jacksonville, Sigma Delta Chi, through their attorney, filed a motion for leave to file a brief as amici curiae — stating that they have a vital interest in seeing that there is no restraint in the flow of information to the press, the word "press," of course, including all media.

I have ruled that the assistant public defender may not withdraw the motion for order restraining prejudicial pre-trial publicity, and I have granted the motion for leave to file a brief as amici curiae — because in my opinion there is more at issue here than the right of the defendant to a fair and impartial trial. There is also the fundamental right of freedom of speech and the press which is established by the United States and Florida constitutions — and consequently the right of the public to know.

The defendant herein was arrested on Wednesday, October 8, 1975, in connection with a robbery and assault to murder. There were several newspaper stories of the incident and two days after the arrest, on Friday, October 10, the assistant defender filed his motion for order restraining pre-trial publicity. Paragraph 6 of the motion states — *"that the principles of a fair and impartial trial require restraint upon unbridled and inflammatory publicity such as would irreparably prejudice the defendant's constitutional*

*rights."* Attached to the motion, and made a part thereof by reference, is a memorandum of the law. On the last page of that memo it states, in part, that — *"the public defender's office would anticipate a continuing course of prejudicial news releases . . .,"* and it further states — *"in anticipation thereof, defendant urges a restraining order."*

It is difficult to understand how four or five news stories could be considered by the assistant defender as "unbridled and inflammatory publicity." Further, it is impossible to comprehend how he would expect any judge to issue such a sweeping restraining order based upon a few news stories and the "anticipation" of the public defender's office that other stories would be written at some future date. I find no law to support the assistant defender's position and, in fact, the law is to the contrary — in support of freedom of the press.

By following the defendant's contention to its ultimate logical application, it would mean that any time a person was arrested for a crime the defense attorney would anticipate future unfavorable news stories and a restraining order would issue, leaving the public uninformed until after the trial was concluded. Such a policy would not only violate the freedom of the press, but could be hazardous to a public which would be uninformed as to potentially dangerous persons or situations. Additionally, one of the greatest assets to law enforcement in the solution of crimes is the free press which disseminates news to the public and the public, in turn, aids enforcement.

The courts throughout this nation have uniformly held that before there is any restraint of the press there must be *a clear and present danger* to the administration of justice. The press may not be restrained at the source or in the final publication unless the threat to a fair trial is *imminent.* The danger must not be remote or even probable — it must immediately imperil.

Such danger to the administration of justice would have to be of an extreme nature because even jurors are expected to have some information about the case and their exposure to news reports does not void their sworn impartiality. See: Cox Broadcasting Corp. v. Cohn, 43 L. Ed. 2d 328; Branzburg v. Hayes, 408 U.S. 665; United States v. Columbia Broadcasting System, Inc., 497 F. 2d. 102; Near v. Minnesota, 283 U.S. 697; Grosjean v. American Press Co., 297 U.S. 233; United States v. Dickinson, 465 F. 2d 496; Murphy v. Florida, 44 L. Ed. 2d 589; and Sheppard v. Maxwell, 384 U.S. 333.

I find no clear and present danger to justify the issuance of an order restraining pre-trial publicity. There are substantial and

adequate safeguards to protect a defendant's rights without infringing upon the freedom of the press and the public's right to know.

Accordingly, the defendant's motion for an order restraining pre-trial publicity is denied.

\*     \*     \*

Two amici curiae filed the following —

BRIEF OF AMICI CURIAE IN OPPOSITION
TO DEFENDANT'S MOTION FOR ORDER
RESTRAINING PRE-TRAIL PUBLICITY FILED BY
FLORIDA PUBLISHING COMPANY AND SIGMA DELTA CHI

Now come Florida Publishing Company, publisher of The Florida Times-Union and Jacksonville Journal, daily newspapers, and Greater Jacksonville Chapter of the Society of Professional Journalists, in Jacksonville, Florida, Sigma Delta Chi, composed of persons in news gathering and news dissemination, radio, television and press, as amici curiae, by undersigned counsel, and show unto the Court:

1. Under the First Amendment to the United States Constitution, there shall be no abridgment of freedom of speech or of the press.

2. Under Article 1, Section 4 of the Constitution of Florida, as revised in 1968, and subsequently amended, there shall be no restraint or abridgment of the liberty of speech or of the press.

3. Notwithstanding, on October 10, 1975, the defendant Willie Lee Williams, through the Public Defender, furnished the Court and served the State Attorney with his signed motion and supporting memorandum requesting the Court to issue its order —

> " . . . binding upon everyone occupying an official position having to do with this case, including the Office of the State Attorney and all his assistants and employees, the Sheriff and all of his deputies and employees, the Public Defender and all of his assistants and employees, the Defendant, all of the officers of this Court, the witnesses for the State and defense, and anyone else connected with this case, that none of the named persons shall release any statement about this case to any news media at any time before or during this trial or until it shall have been completed and disposed of."

4. In support of said motion, plaintiff in his memorandum, cites cases which in substance hold that "where there is a reasonable likelihood that prejudicial news published before a trial will prevent a fair trial, the judge should continue the case until the threat abates or transfer the case to

another county not so permeated with publicity." See Sheppard v. Maxwell, (1969) 384 U. S. 333, at 362-363, 16 L. Ed. 2d 600, quoted on page 2 of the Public Defender's memorandum.

5. The defendant and the Public Defender cite no authority in support of the much broader prior restraints on publication sought in the motion.

6. The United States Supreme Court has repeatedly held that any court order imposing significant prior restraint on the media publication would come to the Court "bearing a heavy presumption against its constitutional validty." New York Times v. United States, 403 U. S. 713, 714, 29 L. Ed. 2d 822, 91 S. Ct. 2140 (1971); Organization for a Better Austin v. Keefe, 402 U. S. 415, 419, 29 L. Ed. 2d 1, 91 S. Ct. 1575 (1971); Bantam Books, Inc. v. Sullivan, 372 U. S. 58, 70, 9 L. Ed. 2d 584, 83 S. Ct. 631 (1963); Near v. Minnesota, 283 U. S. 697, 75 L. Ed. 1357, 51 S. Ct. 625 (1931).

Decisions of this court repeatedly have recognized that trials are public events. See, e.g., Sheppard v. Maxwell, supra, at 349-350, 16 L. Ed. 2d 600, 86 S. Ct. 1507 (1966); Estes v. Texas, 381 U. S. 532, 541, 14 L. Ed. 2d 543, 85 S. Ct. 1628 (1965); Craig v. Harney, 331 U. S. 367, 374, 91 L. Ed. 1546, 67 S. Ct. 1249 (1947). And "reporters ... are plainly free to report whatever occurs in open court through their respective media." Estes v. Texas, supra, at 541-542, 14 L.Ed. 2d 543.

7. In the recent case of Miami Herald v. Tornillo, (1974) 418 U. S. 241, 41 L. Ed. 2d 730, in which undersigned counsel filed brief as amicus curiae, the Supreme Court struck down the so-called Florida Right to Reply Statute and specifically held that both the courts and the legislature were unable to dictate to the press what they should and should not print. We quote from 418 U. S. at page 258:

> "... [T]he Florida statute fails to clear the barriers of the First Amendment because of its intrustion into the function of editors. A newspaper is more than a passive receptacle or conduit for news, comment, and advertising. The choice of material to go into a newspaper, and the decisions made as to limitations on the size and content of the paper, and treatment of public issues and public officials — whether fair or unfair — constitute the exercise of editorial control and judgment. It has yet to be demonstrated how governmental regulation of this crucial process can be exercised consistent with First Amendment guarantees of a free press as they have evolved to this time. Accordingly, the judgment of the Supreme Court of Florida is reversed."

8. There is nothing in the motion or in the supporting memorandum that in any way justifies what the defendant and the Public Defender seek here. There is no justification for any assumption that any publication would in any way jeopardize the right of the defendant to a fair trial nor

is there any justification under the Federal and Florida Constitutions for any such drastic gag rule as sought by the defendant here.

9. The right of the public to know what goes on, particularly in crimes against society and the prosecution therefor, is too precious a right to be jeopardized simply because the defendant or Public Defender wants to muzzle or gag the press on some unjustified fear that something might be published that might in some way prejudice the defendant. There is no basis for anything so far-reaching as that sought here.

10. In the final analysis, the public is entitled to know what goes on in criminal trials and there is no justification for a wholesale gag rule which would prevent the press from obtaining and publishing material and pertinent information.

11. In the recent decision of the United States Court of Appeals for the Fifth Circuit in United States v. Dickinson, 465 Fed. 2d 496, the court said at page 507:

> ". . . In the first place, since the cases make clear that before First Amendment freedoms can be abridged 'the substantive *evil must be extremely serious and the degree of imminence extremely high, Bridges,* supra, 314 U. S. at 263, 62 S. Ct. at 194 that 'the fires which [the expression] kindles must constitute an *immediate,* not merely a likely, threat to the administration of justice. *The danger must not be remote or even probable; it must immediately imperil,'* Craig, supra, 331 U. S. at 376, 67 S. Ct. at 1255, 91 L. Ed. 1546, 'the specific freedom of public comment should weigh heavily against a *possible* tendency to influence pending cases [particularly in borderline instances].' *Pennekamp,* supra, 328 U. S. at 347, 66 S. Ct. at 1037, 90 L. Ed. 1295." (Emphasis supplied.)

12. If the whole judicial system is put under a "gag rule" which prevents the dissemination of news, then the press is clearly prevented from obtaining the information on which the public can be advised.

13. There has been no showing made, let alone a justifiable showing, that anything has been or will be published which would permit such an order as that sought.

14. There is no showing that the imagined evil "is extremely serious and the degree of imminence extremely high." There is no showing of any danger which will "immediately imperil."

15. As stated by our own Florida Supreme Court in Jacova v. Southern Radio, (Fla., 1955) 83 So.2d 34 at 40, quoting from Ross v. Gore, (Fla., 1950) 48 So.2d 412, 415:

> *"The public has an interest in the free dissemination of news. . . .* The only security of all is a *free press. . . .* Since the

preservation of our American democracy depends upon the public's receiving information *speedily* — particularly upon getting news of pending matters while there is still time for public opinion to form and to be felt — *it is vital that no unreasonable restraints be placed upon the working news reporter or the editorial writer.*" (Emphasis supplied.)

And what more unreasonable restraint could be placed upon the securing and "free of dissemination of news" than this gag rule drying up the well springs of information?

We respectfully submit there is no basis for the requested "gag" rule.

FLORIDA PUBLISHING COMPANY
By *Robert R. Feagin*
    President
GREATER JACKSONVILLE CHAPTER OF THE
SOCIETY OF PROFESSIONAL JOURNALISTS,
SIGMA DELTA CHI
By *A. A. Fredrickson*
    President
Amici Curiae

WAHL AND GABEL
By *Harold B. Wahl*
    405 Florida Title Building
    Jacksonville, Florida 32202
    Attorneys for Amici Curiae